NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

JAN 10 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

XIAOBIN CAI; IBEW LOCAL 353 PENSION PLAN,

        Plaintiffs - Appellants,

  v.

EARGO, INC.; CHRISTIAN GORMSEN; ADAM LAPONIS; JOSH MAKOWER; JULIET BAKKER; PETER TUXEN BISGAARD; DOUG HUGHES; GEOFF PARDO; A. BROOKE SEAWELL; DAVID WU; NINA RICHARDSON; J.P. MORGAN SECURITIES LLC; BOFA SECURITIES, INC.; WELLS FARGO SECURITIES, LLC; WILLIAM BLAIR & COMPANY, L.L.C.,

        Defendants - Appellees.

No. 23-3470

D.C. No.
3:21-cv-08597-CRB

MEMORANDUM[*]

Appeal from the United States District Court
for the Northern District of California
Charles R. Breyer, District Judge, Presiding

Argued and Submitted December 5, 2024
San Francisco, California

Before: M. SMITH and BUMATAY, Circuit Judges, and WU, Senior District

---

    [*]    This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

Judge.**

Xiaobin Cai and IBEW Local 353 Pension Plan sued Eargo, Inc. and the other defendants for securities violations under the Securities Act of 1933 ("Securities Act") and the Securities and Exchange Act of 1934 ("Exchange Act"). The district court dismissed Plaintiffs' complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). Plaintiffs declined leave to amend and now appeal the district court's dismissal. We have jurisdiction under 28 U.S.C. § 1291, review de novo, and affirm. *See Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1105 (9th Cir. 2021).

1.    We begin with the Securities Act. Issuers face liability for filing a prospectus ahead of an initial public offering ("IPO") that contains materially false statements or omits information needed to ensure a statement is not misleading. *See* 15 U.S.C. § 77k(a). Plaintiffs must "demonstrate (1) that the registration statement contained an omission or misrepresentation, and (2) that the omission or misrepresentation was material, that is, it would have misled a reasonable investor about the nature of his or her investment" to survive dismissal. *Anderson v. Clow (In re Stac Elecs. Sec. Litig.)*, 89 F.3d 1399, 1403–04 (9th Cir. 1996) (simplified). No showing of scienter is required. *Id.*

---

**     The Honorable George H. Wu, United States Senior District Judge for the Central District of California, sitting by designation.

Plaintiffs' Securities Act claims focus on three areas: (1) statements about Eargo's revenue recognition; (2) statements about potential risk factors; and (3) statements about Eargo's potential growth. For example, Plaintiffs contend that Eargo's statements that "the Company assesses insurance eligibility," was misleading because Eargo did not confirm with its insurers that its online screening test or a customer self-assessment was sufficient to satisfy insurers' medical necessity requirements. Plaintiffs also claim that Eargo should not have recognized insurance revenue because the insurance claims ultimately proved to be non-reimbursable. And Plaintiffs contend that Eargo failed to satisfy its 17 C.F.R. § 229.303(b)(2)(ii) ("Item 303") requirement because it did not disclose "the known uncertainties and risks of having to forfeit past insurance proceeds" or risks associated with insurers' exclusion of "over-the-counter" hearing aids from coverage.

We affirm the dismissal of these claims. In context, the prospectus made clear that Eargo was evaluating whether a potential customer had an insurance policy that covered hearing aids. Further, insurers had reimbursed Eargo's claims for nearly three years before the statements in the prospectus were made. And "[f]raud by hindsight is not actionable." *Ronconi v. Larkin*, 253 F.3d 423, 430 n.12 (9th Cir. 2001) (simplified), *abrogated on other grounds by Matrixx Initiatives v. Siracusano*, 563 U.S. 27, 37–49 (2011). Instead, Eargo's prospectus disclosed a wide range of

potential risks to its business, including the inherent risk of a new market-disrupting business model, the possibility that insurers could limit or reduce coverage, and the legal risks of failing to comply with federal laws and regulations such as the False Claims Act. These disclosures put prospective investors on notice of the fundamental risks to Eargo's business. And Eargo's growth statements are clearly puffery and thus non-actionable. *See Police Ret. Sys. of St. Louis v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1060 (9th Cir. 2014) ("Statements of mere corporate puffery . . . are not actionable[.]").

2. We also affirm the dismissal of Plaintiffs' Exchange Act claims. *See* 17 C.F.R. § 240.10b-5(b); 15 U.S.C. § 78j(b). While Exchange claims contain six elements, only whether Eargo made a "material misrepresentation or omission" and had "scienter" are contested. *See Levi v. Atossa Genetics, Inc. (In re Atossa Genetics Inc. Sec. Litig.)*, 868 F.3d 784, 793 (9th Cir. 2017) (simplified). Plaintiffs' misrepresentation claims focus on four categories of post-IPO statements: (1) statements about Blue Cross Blue Shield ("BCBS")'s audit; (2) statements about revenue recognition; (3) statements about risk factors; and (4) statements about Eargo's growth.

These statements include Eargo's description of BCBS's audit as "routine," that the audit was part of "an educational process" with BCBS, and that BCBS was "not questioning claims." Plaintiffs again challenge Eargo's statements that it

"validates," "verif[ies]," or "assesses" its customers' insurance eligibility. Plaintiffs also argue Eargo's risk factor statements were misleading because they presented the risks as hypothetical when they "had already materialized." Plaintiffs further claim that Eargo's post-IPO growth statements were false or misleading. Plaintiffs have not shown that these statements were misleading.

In context, Eargo explained that much of its business growth depended on insurance reimbursement, that its business could suffer significantly if it had issues with insurers, and that it could face serious liability if it was found to violate the False Claims Act. Eargo disclosed the BCBS audit and the potential damage that it may cause. It explained that BCBS accounted for much of its income, that the audit could result "in significant delays in payment," and that BCBS was already withholding payments. Further, Eargo's description of the audit as "routine" was an opinion, and Plaintiffs do not allege with particularity that this was an actionable statement. *See City of Dearborn Heights Act 345 Police & Fire Retirement Sys. v. Align Tech., Inc.*, 856 F.3d 605, 614–16 (9th Cir. 2017); Fed. R. Civ. P. 9(b). Similarly, Eargo's statement about the audit being an "educational process" is directly supported by BCBS's deputy general counsel's description of it as an "educational experience." And the communications between Eargo and BCBS show that BCBS was questioning Eargo's *process* for establishing medical necessity rather than the claims themselves, which suggests Eargo's chief executive officer's

statement about "questioning claims" was not misleading.

Finally, many of the challenged projections reflect puffery or corporate optimism, which are not actionable. *See Police Ret. Sys.*, 759 F.3d at 1060. And Eargo's revenue guidances are protected as forward-looking statements. *See No. 84 Emp.-Teamster Joint Council Pension Tr. Fund v. Am. W. Holding Corp.*, 320 F.3d 920, 936 (9th Cir. 2003).

3. In addition, Plaintiffs failed to plead scienter—the "mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 319, 321 (2007). Plaintiffs needed to "state with particularity facts giving rise to a *strong inference* that the defendant acted with the required state of mind." *Glazer Capital Mgmt., L.P. v. Forescout Techs., Inc.*, 63 F.4th 747, 766 (9th Cir. 2023) (quoting 15 U.S.C. § 78u-4(b)(2)(A)). Here, Eargo's chief executive officer and chief financial officer *increased* their Eargo stock holdings during the class period, which contradicts the inference of scienter. *See Inter-Local Pension Fund GCC/IBT v. Deleage* (*In re Rigel Pharms., Inc. Sec. Litig.*), 697 F.3d 869, 884–85 (9th Cir. 2012) (the lack of advantageous stock sales "during the period between the allegedly fraudulent statements and the subsequent public disclosure" does not support an inference of scienter and "[i]n fact" supports the opposite inference). Thus, Plaintiffs' Exchange Act claims fail on both challenged prongs.

**AFFIRMED.**